**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-22184-BLOOM**

JASMINE CLEVELAND, on behalf
of herself and others similarly situated,

       Plaintiffs,

v.

1602 LAND TRUST LLC D/B/A TABOO
BY GFIVE GENTLEMEN'S CLUB, SHEMARA
TODD, and COREY TODD,

       Defendants.

_____/

## <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant 1602 Land Trust LLC's ("Defendant")

Motion to Dismiss, ECF No. [11] ("Motion"). Plaintiff Jasmine Cleveland ("Plaintiff") filed a

Response in Opposition, ECF No. [16], to which Defendant filed a Reply, ECF No. [17].. The

Court has carefully reviewed the Motion, the supporting and opposing submissions, the record,

and is otherwise fully advised. For the reasons that follow, the Motion is granted.

### I.      FACTUAL BACKGROUND

This case was brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

("FLSA"). ECF No. [1] ¶ 1. Taboo by GFive Gentlemen's Club ("Taboo") features nude female

entertainers. *Id.* ¶ 21. Plaintiff was employed at Taboo from April 2025 to November 2025. *Id.* ¶

2.

During that time, Defendants characterized Plaintiff and other entertainers as independent

contractors instead of employees; as a result, they were not paid minimum wage. *Id.* ¶ 23.

Moreover, Defendants required Plaintiffs and other entertainers to pay certain fees and "tip-outs" each shift. *Id.* ¶ 24.

Taboo controlled entertainers' work schedules by requiring them to work a minimum number of shifts and hours per shift or pay a monetary fine for failure to do so. *Id.* ¶ 25. Defendants and Taboo's house moms and managers controlled the appearance and dress of entertainers at Taboo. *Id.* ¶ 26. They also required entertainers to change their appearance and attire at work and had the authority to suspend and discipline entertainers. *Id.* ¶¶ 28, 29. Defendants and Taboo's managers supervised entertainers on a day-to-day basis, required entertainers to attend meetings to discuss workplace issues, and used mandatory entertainers meetings to discuss problems with entertainers' "dress, hair, makeup, weight, and appearance, club promotional efforts[,] and other work-related issues." *Id.* ¶¶ 30–32.

Defendants and Taboo made all advertising, marketing, and promotional decisions regarding the club and paid all costs associated with advertising, marketing, and promoting the club. *Id.* ¶ 33. They required customers to pay a "door fee" to enter the business and therefore had ultimate authority as to which individuals were allowed to enter the club as customers. *Id.* ¶ 34. Defendants and Taboo's managers and house moms also had the discretion not to permit an entertainer to perform if she arrived to a scheduled shift after a certain time. *Id.* ¶ 35.

Taboo's DJs gave entertainers instructions to report to the stage and/or remove clothing while on stage. Taboo's DJs called entertainers to dance on stage on a set rotation established by the entertainers' time of arrival. *Id.* ¶ 37. Taboo enforced a mandatory check-out process for the club's entertainers, which included paying various fees to the club and its managers, house moms, and DJs. *Id.* ¶ 38. Taboo maintained and enforced rules of conduct for entertainers. *Id.* ¶ 39. Taboo management was responsible for ensuring that entertainers complied with club rules and policies.

*Id.* ¶ 40. Taboo provided all stages and poles used for entertainers' performances at the club. *Id.* ¶¶ 41, 42. Taboo was responsible for the day-to-day purchases of liquor for sale at the club. *Id.* ¶ 43.

When an individual sought to work as an entertainer at Taboo, a house mom and manager generally performed a "body check" to determine if the individual's body was suitable for performing at the club. *Id.* ¶ 45. Taboo required Plaintiff and other similarly situated workers to work a minimum number of days per week, including a minimum number of "slow days," or else they would be required to pay fines. *Id.* ¶ 46. Taboo advertised its business using pictures of scantily-clad women, and the presence of nude entertainers was integral to Taboo's business success and operations. *Id.* ¶¶ 47, 48.

Plaintiff and other similarly situated workers did not have their own business entities or employees associated with their dance work, and the job required no management of other employees. *Id.* ¶ 49. Still, Defendants paid no wages or other compensation to Plaintiff and other similarly situated workers, classifying them as independent contractors. *Id.* ¶ 53, 55. Plaintiff and other similarly situated workers worked entirely for tips paid by Taboo's customers. *Id.* ¶ 54.

On March 30, 2026, Plaintiff filed the instant action on behalf of herself and all others similarly situated. *See generally id*. She asserts claims based on violation of 29 U.S.C. §§ 206 and 215 (Count I) and reimbursement of house fees and tips (Count II). *Id.* ¶¶ 64–88.

Defendant filed the instant Motion, seeking dismissal under 12(b)(6) and arguing that it is not a proper party to this suit. ECF No. [11]. Plaintiff responds that the Motion should be denied, as Defendant is a proper party to this litigation. ECF No. [16]. Defendant replies that Plaintiff fails to properly allege that Defendant is a joint employer and, as such, dismissal is warranted. ECF No. [17].

## II.  LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

Although a court primarily considers only facts contained within the four corners of the complaint when ruling on a motion to dismiss, "when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

### III.   DISCUSSION

In its Motion, Defendant argues that, while it is the owner of the real property where Taboo is located, it does not have any involvement in the ownership, management, or day-to-day operations of Taboo. ECF No. [11] ¶¶ 4, 5. While the Complaint alleges Plaintiff was employed at Taboo from *April 2025* to December 2025, Defendant did not exist as a corporate entity before *July 8, 2025*. *Id.* ¶ 7. Moreover, Defendant did not purchase the real property where Taboo is located until July 31, 2025. *Id.* ¶ 11. Taboo, Defendant asserts, owns the liquor license and food and beverage license associated with the club. *Id.* ¶¶ 8, 9. Finally, Defendant points out that Plaintiff executed an Entertainer Performance and Arbitration Agreement with *Taboo*, an entirely different entity associated with all her activities at the subject property. *Id.* ¶ 13. Fundamentally, Defendant argues it is merely the landlord who leases a portion of the subject warehouses to Taboo; it has no involvement in or control over the operation of the club, is not a license holder of any of the club's operations, has no employees and no interaction with Plaintiff, and is the incorrect named defendant in this matter. *Id.* ¶ 17. As such, dismissal is warranted. *Id.*

Plaintiff responds that she has plausibly alleged that Defendant is a proper party to the suit. ECF No. [16] at 4. Specifically, Defendant and Taboo operate out of the same address and share a common owner, Shemara Todd. *Id.* Moreover, Plaintiff's Complaint alleges that her employment

and damages "overlap[] with [Defendant]'s existence." *Id*. Thus, the Motion should be denied. *Id.* at 5.

Defendant replies that Plaintiff fails to properly allege that it is a joint employer. ECF No. [17] at 3. Defendant's attachments to the Motion make clear that Taboo is owned by a "different and separate corporation that is not named as a defendant in this case." *Id.* at 4. Moreover, the Complaint fails to allege "common ownership, common management, interrelation between operations or a centralized control of labor relations" or any other factual allegations required to show common ownership or joint employer status. *Id*. Furthermore, Plaintiff has failed to allege "any shared right to directly or indirectly hire, fire, or modify the employment conditions of the workers." *Id.* at 5. Instead, Plaintiff "pleads only insufficient or conclusory allegations with regards to the nature and degree of control [Defendant] had over her or any other alleged employee." *Id*. She does not allege that Defendant had any power to determine pay rate or the method of payment or that Defendant participated in the preparation of payroll or payment of wages. *Id*.

"[T]he requirements to state a claim of a FLSA violation are quite straightforward." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008). A plaintiff must show (1) an employment relationship; (2) that the employer engaged in interstate commerce; and (3) that the employee worked over forty hours per week but was not paid minimum wage and/or overtime. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008); *Labbe*, 319 F. App'x at 763.

As to the first element, the term "employer" is defined broadly in the FLSA, including "any person acting directly or indirectly in the interests of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). "In determining whether a party is an employer, courts have long assessed the economic reality of the relationship between the employee and the alleged employer." *Ceant v.*

*Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1381 (S.D. Fla. 2012) (internal quotation and citation omitted). "The economic reality test includes inquiries into whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997) (quotation omitted); *see also Wilkinson v. Moose Int'l, Inc.*, No. 8:16-cv-159-T-17MAP, 2016 WL 3064098, at *5 (M.D. Fla. May 27, 2016) (find that "there is no hard and fast rule for pleading the existence of an employment relationship under the FLSA").

Relatedly, that FLSA contemplates that multiple persons or entities may be an individual's "employers" under the joint employment doctrine. *See* 29 C.F.R. § 791.2. The test for determining whether a joint enterprise exists is flexible. *See Cornell v. CF Ctr., LLC*, 410 F. App'x 265, 268 (11th Cir. 2011) (noting that courts must "look beyond formalistic corporate separation to the actual, pragmatic operation and control, whether unified or, instead, separate as to each unit" (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 970 (5th Cir. 1984))). Still, to proceed under this joint enterprise theory, a plaintiff must adequately allege that the two businesses: (1) performed related activities, (2) through a unified operation or common control, and (3) for a common business purpose. 29 C.F.R. § 779.202; *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984); *Jimenez v. Southern Parking, Inc.*, No. 07–23156, 2008 WL 4279618, at *9 (S.D. Fla. 2008).

Taken together, the relevant considerations for employer status under the FLSA are as follows:

1. the nature and degree of the defendant's control of the workers;
2. the defendant's degree of supervision, direct or indirect, of the workers;
3. the defendant's power to determine the pay rates or the methods of payment of the workers;

4. the defendant's right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers;
5. whether the defendant prepared payroll or paid the workers' wages;
6. the defendant's ownership of the facilities where the work occurred;
7. whether the workers performed a specialty job integral to the defendant's business; and
8. the defendant's investment in equipment and facilities relative to that of the workers.

See *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175–81 (11th Cir. 2012).

Here, the Court finds that Plaintiff has not satisfied this minimal pleading standard. First, the Court finds it appropriate to consider the exhibits showing (a) that Defendant did not purchase the subject property until July 31, 2025, ECF No. [11-1], (b) that Defendant did not exist as a corporate entity until July 8, 2025, ECF No. [11-2], (c) that Taboo owns the liquor license associated with the club, ECF No. [11-3], (d) that Taboo owns the food and beverage license associated with the operation of the club, ECF No. [11-4], and (e) that Plaintiff executed an Entertainer Performance and Arbitration Agreement with Taboo, ECF No. [11-5]. Each of these documents would be central to Plaintiff's case, insofar as Plaintiff would have "to offer a copy of the article in order to prove their case." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007) (quoting *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988)). That is, the crux of Plaintiff's claimsare whether the named parties are employers, so these documents are critical.

Turning to the merits, the Complaint is devoid of factual allegations sufficient to demonstrate that Defendant is either directly an employer or an employer by way of the joint enterprise test. There is no allegation that Defendant had the power to hire and fire employees, supervised and controlled employee work schedules, determined the rate and method of payment, or maintained employment records. *Villarreal*, 113 F.3d at 205 (quotation omitted). Indeed, Plaintiff alleges that "[t]he Club"—that is, Taboo—"directly and indirectly controlled entertainers'

8

work schedules by requiring them to work a minimum number of shirts and hours per shift." ECF No. [1] ¶ 24. Beyond this, Plaintiff merely offers conclusory allegations—that "[t]he Defendants and Taboo's managers directly and indirectly supervised entertainers on a day-to[-]day basis." *Id.* ¶ 30. These conclusory allegations are insufficient and not entitled to the presumption of truthfulness. *See Twombly*, 550 U.S. at 555 (a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").[1] Thus, Plaintiff has not adequately alleged that Defendant is an employer in the straightforward sense.

Similarly, Plaintiff does not satisfy the minimal pleading requirements pertinent to the joint enterprise test. That the same individual—Defendant Shemara Todd—owned both companies only means that the *individual* could be considered a joint employer with (and equally as liable as) either corporate defendant. *See Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) ("a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages") (internal citation and quotations omitted). It does not follow that the two businesses themselves are joint enterprises. "A plaintiff must still allege facts demonstrating that the two businesses performed related activities for a common business purpose." *Gonzalez v. Old Lisbon Rest. & Bar L.L.C.*, 820 F. Supp. 2d 1365, 1369 (S.D. Fla. 2011).

Here, Plaintiff has not alleged that Defendant and Taboo perform related activities. "Activities are related when they are 'the same or similar' or when they are 'auxiliary and service activities.'" *Donovan*, 723 F.2d at 1551 (citing S. Rep. No. 145, 87th Cong., 1st Sess. 31, *reprinted*

---

[1] Plaintiff does offer factual allegations that refer to "Defendants" generally—and insofar as Defendant is named in the suit, these allegations could imply Defendant's control over the "conditions of [Plaintiff's] employment." *Villarreal*, 113 F.3d at 205 (quotation omitted). But the critical allegations—control over schedule, pay, hiring and firing, and employment records—are missing.

*in* 1961 U.S. Code Cong. & Ad. News 1620, 1660); *see also* 29 C.F.R. § 779.206 (citing same). A prime example of alleging related activities is found in *Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1367 (5th Cir. 1973). In that case, the former Fifth Circuit "concluded that three nominally separate companies—a commercial janitorial services provider, a residential maid service, and a sewer and septic tank cleaning and maintenance service—performed related activities because the three companies all provided cleaning services using the same office, equipment, and employees." *Gonzalez*, 820 F. Supp. 2d at 1369 (*Donovan*, 723 F.2d at 1551–52). But in the Complaint here, Plaintiff does not allege anything of this sort. The Court is confronted with allegations of one business that employs exotic dancers and one that operates as a landlord. These do not constitute related activities.

Similarly, Plaintiff fails to allege that Taboo and Defendant shared "a common business purpose." 29 C.F.R. 779.213 states that a "common business purpose" includes activities "directed to the same business objective or to similar objectives in which the group has an interest." In *Morgan v. SpeakEasy, LLC*, 625 F.Supp.2d 632, 648 (N.D. Ill. 2007), this prong was satisfied where two adjoining restaurants considered themselves to be "sister restaurants." But again, the Complaint is devoid of allegations to this effect. There is no indication that Defendant and Taboo shared a common business purpose. Thus, Plaintiff has not satisfied her pleading burden with respect to the joint enterprise test.

Moreover, many of Plaintiff's specific factual allegations of Defendant's control are contradicted by the records provided by Defendant, which are either incorporated by reference or appropriately subject to judicial notice.[2] For instance, the record evidence that is appropriate for

---

[2] *See, e.g., Austin v. Regency Realty Inc.*, No. 24-10283, 2026 WL 496877, at *1 (11th Cir. Feb. 23, 2026) (deeming a property purchase agreement attached to a motion to dismiss incorporated by reference); *Nardolilli v. Bank of New York Mellon*, No. 16-81653-CIV, 2017 WL 5634714, at *2 (S.D. Fla. June 21, 2017) (deeming a warranty deed incorporated by reference for purposes of showing when property was

consideration at this stage demonstrates that Plaintiff signed an Entertainer Performance and Arbitration Agreement with *Taboo alone*, not with Defendant. ECF No. [11-5]. Moreover, Defendant does not own any of the relevant licenses that are key to operation of the business. ECF Nos. [11-3] and [11-4]. Critically, Defendant did not own the real property at issue for *four months* of Plaintiff's employment and therefore could not have been Plaintiff's employer at that time. ECF Nos. [11-1] and [11-2]. And a review of the Florida Division of Corporations website reveals a business operating under the name Taboo Miami by GFive, based at the address cited by Plaintiff in the Complaint, but owned by an entity known as G5IVE, LLC. SUNBIZ, FLORIDA DIVISION OF CORPORATIONS, https://dos.sunbiz.org/scripts/ficidet.exe?action=DETREG&docnum=G2400001 9439&rdocnum=G92233000148 (last accessed June 9, 2026).

In short, Plaintiff sued the wrong entity, and courts in this circuit regularly grant motions to dismiss on such a basis where appropriately incorporated or judicially noticed exhibits support such a finding. *See, e.g.*, *Worthy v. Woody Folsom Automotives*, No. CV 2:18-051, 2019 WL 2320877, at *1 (S.D. Ga. May 29, 2019); *Innocent v. Palm Beach Cnty. Workforce Dev. Consortium*, No. 21-CV-80623, 2021 WL 7082830, at *3 (S.D. Fla. Oct. 22, 2021); *MSPA Claims 1, LLC v. Liberty Mut. Ins.*, No. 1:15-CV-21417-UU, 2015 WL 4511284, at *2 (S.D. Fla. July 22, 2015); *Tolentino-Bernabe v. Liberty Mut. Ins. Co.*, No. 619CV2175ORL41LRH, 2020 WL

---

purchased); *Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1270 n.1 (S.D. Fla. 2017) (taking judicial notice of corporate records available on the Florida Division of Corporation's website); *Demeter v. Little Gasparilla Island Fire & Rescue, Inc.*, No. 2:16-cv-264-FtM-38CM, 2017 WL 662006, at *2 (M.D. Fla. Feb. 17, 2017) (Chappell, J.) (taking judicial notice of the defendant's "Sunbiz" profile from the Florida Department of State's website because such website was a verified website of a public agency); *Am. Marine Tech, Inc. v. World Group Yachting, Inc.*, No. 19-cv-60636-BLOOM/Valle, 2019 WL 5103786, at *4 (S.D. Fla. Oct. 11, 2019) (taking judicial notice of corporate records available on the Florida Department of State's website to recognize the defendant's fictitious name); *Bouton v. Ocean Props., Ltd.*, 201 F. Supp. 3d 1341, 1348 (S.D. Fla. 2016) (taking judicial notice of a liquor license).

2838804, at *2 (M.D. Fla. Jan. 8, 2020); *CMR Contruction & Roofing LLC v. Liberty Mut. Ins. Co.*, No. 219CV809FTM38NPM, 2020 WL 89586, at *1 (M.D. Fla. Jan. 7, 2020).

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.   Defendant's Motion, **ECF No. [11]**, is **GRANTED**.

2.   The above-styled case is **DISMISSED** as to Defendant 1602 Land Trust LLC only.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 22, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record